```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

UNITED STATES OF AMERICA,     )
                              )    CRIMINAL NO. 04-10288-RWZ
        v.                    )
                              )
CARLOS ESPINOLA, ET AL.       )
        Defendants            )
                              )

**Government's Motion In Limine Concerning
Admissibility Of Evidence Of Defendant
Carlos Espinola's Possession Of A Handgun**

**Introduction**

The United States of America, by Michael J. Sullivan, United States Attorney, and Michael J. Pelgro, Assistant U.S. Attorney, hereby files this motion in limine concerning admissibility of evidence of defendant Carlos Espinola's possession of a handgun. For the reasons set forth below, the Court should admit into evidence testimony by multiple witnesses that defendant Carlos Espinola ("Espinola") possessed a handgun on several occasions while supplying OxyContin pills in furtherance of the conspiracy charged in Count One of the indictment.

**Factual Background**

The government intends to introduce evidence of a widespread conspiracy to distribute OxyContin (oxycodone) pills in the Gloucester area. The conspiracy was in existence from at least the summer of 2002 until June 29, 2004, when several members of the conspiracy were arrested by the Drug Enforcement Administration ("DEA"). From October 2003 through June 2004,

multiple undercover officers and agents purchased OxyContin pills directly from various members of the conspiracy and engaged in extensive negotiations with the conspirators over the telephone and in person. These transactions and negotiations were recorded, surveilled, and, on certain occasions, videotaped.

The government expects the evidence to establish that defendant Joseph Baldassano ("Baldassano") was one of the larger OxyContin distributors in Gloucester and that he was assisted in this endeavor by several of the other defendants, who played various roles. The government further expects the evidence to establish that Baldassano's source of supply for most of the conspiracy was defendant Carlos Espinola ("Espinola"), who resided in Peabody. The government expects to present various recorded conversations in which Baldassano and other defendants described to undercover officers and agents Baldassano's supplier in ways that fit Espinola and talked about the fact that Baldassano's supplier lived near the North Shore Mall in Peabody; the evidence will be that Espinola lived at 63 Endicott Street in Peabody, which is near the North Shore Mall.

The government has entered into a plea agreement with Baldassano wherein Baldassano has agreed to cooperate with the government and to testify against Espinola at trial. Baldassano will testify that Espinola was his OxyContin supplier for most of the conspiracy, that Baldassano obtained large quantities of

OxyContin pills from Espinola multiple times per week, that these pills were worth thousands of dollars, that Espinola would deliver the pills to Baldassano in Gloucester or Lowell,[1] and that Baldassano would obtain the pills from Espinola inside the latter's apartment in Peabody, which was near the North Shore Mall.  Baldassano will testify that Espinola was a "prospect" for the Red Devils motorcycle club when he first met Espinola, that Espinola became a member of the club during the conspiracy, and that Baldassano attended club functions with Espinola on at least two occasions during the conspiracy; other witnesses will testify that Baldassano or other conspirators stated that Baldassano's source was a member of the Red Devils and that they observed Espinola driving a motorcycle or wearing a motorcycle vest.[2]

### Evidence To Be Admitted

The government expects Baldassano to testify that Espinola frequently carried a handgun when Espinola supplied Baldassano with OxyContin pills.  When Espinola delivered the pills to Baldassano in Gloucester or Lowell, Espinola carried a handgun on his person.  When the deals occurred inside Espinola's apartment in Peabody, Espinola had a handgun available and showed it to

---

[1] During portions of the conspiracy, Baldassano and defendant Matthew Cream lived in an apartment in Lowell.

[2] The government is filing a separate motion in limine concerning the admissibility of the evidence that Espinola, in fact, was a member of the Red Devils motorcycle club during the conspiracy.

Baldassano. Indeed, Baldassano will testify that Espinola kept more than one handgun inside his apartment.

Other civilian witnesses who were customers of the organization will testify that they were present when Espinola delivered OxyContin pills to Baldassano, that they met or were introduced to Espinola, and that they observed Espinola to be in possession of a handgun. Indeed, one customer will testify that Espinola took out the handgun and showed it to him. The evidence will be that these were not social occasions; the customers were present to obtain pills from Baldassano, defendant Joseph Allen ("Allen"), or other members of the drug conspiracy.

## Argument

For many years, the First Circuit has ruled consistently that evidence of firearms possession is directly relevant to prove a drug conspiracy because "in drug trafficking firearms have become 'tools of the trade' and thus are probative of the existence of a drug conspiracy." United States v. Green, 887 F.2d 25, 27 (1st Cir. 1989).[3] *See also* United States v. Walters, 904 F.2d 765, 769 (1st Cir. 1990)(affirming admissibility of multiple firearms recovered from a residence connected to the

---

[3] In Green, the Court affirmed the district court's decision to admit evidence that the police searched a residence connected to the defendant and that they recovered six firearms, ammunition, a photograph depicting one of the defendant's co-conspirators holding a gun, and a videotape depicting the defendant and others handling firearms. Id. at 26.

4

defendant as tools of the drug trade); United States v. Ford, 22 F.3d 374, 381-82 (1st Cir. 1994)(affirming in a cocaine and marijuana case the admissibility of recovered book entitled "Secrets of Methamphetamine Manufacture" as a tool of the drug trafficking trade).[4]  Most recently, in United States v. McGuire, 389 F.3d 225 (1st Cir. 2004), the Court relied on this doctrine to affirm the district court's admission of evidence that the police found a handgun in the defendant's residence as well as evidence that the defendant used a handgun to assault others in order to protect the drug conspiracy from theft and other threats.  Id. at 228-230.

As recognized by the McGuire court, the government is not required to demonstrate that the evidence has some "special relevance" to a disputed issue under Fed. R. Evid. 404(b) because guns are "tools of the trade" and thus directly relevant to prove the drug crime.  Id. at 229-30.  In short, it is intrinsic evidence that is direct proof of the crime charged and thus need not satisfy Rule 404(b).  *See also* United States v. David, 940 F.2d 722, 737 (1st Cir. 1991)("Evidence which is part and parcel of the crime being tried is simply not 'other crimes' evidence within the ambit of Rule 404(b).").  In this case, evidence that

---

[4]In United States v. Ferreira, 821 F.2d 1, 6 (1st Cir. 1987), the Court observed in dicta that "in cases where the weapons are unrelated to the crime charged, they are relevant as 'tools of the trade' to show their necessity for the success of the criminal venture."

5

Espinola carried a handgun, or had them available at his apartment, is directly relevant to establish that he was a high-level member of the drug conspiracy and that he possessed weapons in order to ensure success in his drug deals.

In addition to being intrinsic evidence of the charged drug conspiracy, the evidence in this case is also admissible for another reason. Baldassano will testify that Espinola often carried a handgun to the drug deals. Baldassano's credibility will become an important and disputed issue during this trial. The fact that other witnesses will testify that they too observed Espinola in possession of a handgun during drug deals will serve to corroborate Baldassano on this important point.

As the McGuire court recognized, even intrinsic or directly relevant evidence must meet the requirements of Fed. R. Evid. 403, that is, "the probative value of the evidence still must not be substantially outweighed by the danger of unfair prejudice." 389 F.3d at 229. Unfair prejudice in this context cannot be equated with prejudice since "[b]y design, all evidence is meant to be prejudicial." United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989). Thus, "unfair prejudice" refers only to evidence "that invites the jury to render a verdict on an improper emotional basis." McGuire, 389 F.3d at 229; United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000). As the Supreme Court has elaborated, "[t]he term 'unfair prejudice,' as

to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. ... So, the Committee Notes to Rule 403 explain, '"Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650 (1997)(citations omitted).

In this case, the evidence of Espinola's possession of a handgun is not unfairly prejudicial because it is simply that – evidence that he possessed a handgun during drug deals. It does not even rise to the emotional level of the evidence that the McGuire court ruled admissible – evidence that the defendant used a gun to assault other people. There will be no evidence that Espinola shot, assaulted, or threatened anybody with the handgun. Indeed, the government does not expect to put in evidence that Espinola even pointed the gun at anybody. He simply possessed it during drug deals. As such, this evidence is not unfairly prejudicial to Espinola.

**Conclusion**

Based on the foregoing, the government respectfully requests that the Court rule admissible the testimony of Baldassano and other witnesses that Espinola possessed a handgun during his OxyContin transactions.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/Michael J. Pelgro
      Michael J. Pelgro
      Assistant U.S. Attorney


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants.

  /s/Michael J. Pelgro
  Michael J. Pelgro
  Assistant United States Attorney


Dated:    May 2, 2006.